UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FEDERAL HOUSING FINANCE AGENCY, AS CONSERVATOR FOR THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND THE FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>     Plaintiff,<br><br>   -v-<br><br>UBS AMERICAS, INC., *et al*.<br><br>     Defendants. | Case No. 11 CIV. 5201 (DLC)<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED SAMPLING PROTOCOL** |
| Other Cases Brought By This Plaintiff:<br><br>11 Civ. 6188 (DLC)<br>11 Civ. 6189 (DLC)<br>11 Civ. 6190 (DLC)<br>11 Civ. 6192 (DLC)<br>11 Civ. 6193 (DLC)<br>11 Civ. 6195 (DLC)<br>11 Civ. 6196 (DLC)<br>11 Civ. 6198 (DLC)<br>11 Civ. 6200 (DLC)<br>11 Civ. 6201 (DLC)<br>11 Civ. 6202 (DLC)<br>11 Civ. 6203 (DLC)<br>11 Civ. 6739 (DLC)<br>11 Civ. 7010 (DLC)<br>11 Civ. 7048 (DLC) | |

**INTRODUCTION**

Having initiated more than 17 actions in multiple forums seeking over one hundred billion dollars in alleged damages against dozens of financial institutions and over 100 individuals, the Federal Housing Finance Agency ("Plaintiff") asks, at the outset of litigation, that the Court reduce Plaintiff's burdens by pre-approving a sampling "methodology" that Plaintiff apparently intends to use at trial to prove liability and damages. This methodology apparently would be based on the consideration of only a small fraction of the loans underlying the securities Plaintiff has placed at issue in this litigation involving almost 450 separate securitizations from different time periods at issue in 16 cases.[1] Both the Court and Defendants have repeatedly invited Plaintiff to specify the "sampling protocol" that Plaintiff wants the Court to bless. (*See* Order 6, Feb. 6, 2012; Defendants' Amended Report Concerning Certain Case Management Issues 13, Jan. 13, 2012 ("Def. Am. Rep.").)[2] Yet Plaintiff has declined to specify any proposed sampling protocol, even after it requested and obtained extensions of time "to work

---

[1] Following transfer of one of the 17 cases by the JPML, Defendants now include 16 groups of separately represented institutional defendants plus 120 individual defendants, all of whom have significant but non-identical interests in these subjects. For example, each case concerns from as few as two to as many as 103 Securitizations. (Proposed Sampling Protocol, Exhibit A, Feb. 29, 2012.) Each Defendant reserves the right separately to address Plaintiff's one-size-fits-all approach, in the event that an approach raises additional concerns as ultimately proposed or applied in any particular action or to any particular defendant.

[2] While Defendants are prepared in good faith to continue exploring whether sampling methodologies may prove to be valid and useful evidence at trial, they fully reserve the right to argue that sampling in general or particular sampling protocols are not reliable or are otherwise inadmissible. What is absolutely clear, at a minimum, is that it is premature to adopt a sampling protocol at this stage of the proceedings that will dictate the conduct of discovery and the quantum of proof required across each of 16 cases.

with its sampling expert to develop a meaningful proposal." (*See* Letter from Philippe Selendy to the Honorable Denise L. Cote, Feb. 15, 2012.)

Plaintiff's February 29, 2012 "Proposed Sampling Protocol" (hereafter, the "Proposal") does not present a "meaningful proposal," let alone a "sampling protocol." That is not surprising. Designing a protocol by which Plaintiff's expert could "sample" loans to determine liability and damages is wholly premature at this stage, as a first motion to dismiss a recently amended pleading remains pending and discovery has not even begun. Any meaningful sampling protocol necessarily would require significant fact discovery, data analysis and input from statisticians and other experts.

Indeed, Plaintiff's submission *concedes* prematurity, acknowledging that no meaningful sampling protocol can be designed until Plaintiff:

- "[R]eceives loan tapes and originator information," securitization by securitization, and case by case, for 449 separate securitizations (which Plaintiff calls on Defendants to produce three weeks from now, on April 5, 2012);

- Spends five weeks analyzing that discovery material, after which all "parties simultaneously exchange the protocol for at least one [c]ase;" and

- Spends another five weeks simultaneously exchanging protocols "on a rolling basis thereafter" in each of the other cases. (Proposal 11-12.)

This Proposal is both premature and without legal basis. As an initial matter, it disregards this Court's stay of discovery as well as the pending and anticipated motions to dismiss. It ignores the prospect that decisions on those motions could significantly narrow the claims and Securitizations at issue. It also oversimplifies and understates the information-gathering necessary to formulate a sound sampling methodology, making broad pronouncements without disclosing an adequate basis or expert support for them. It turns the Federal Rules of Civil Procedure and Federal Rules of Evidence on their heads. In place of mutual fact discovery

2

aimed at formulating expert opinions for the parties to proffer to the Court to determine relevance, reliability and admissibility, Plaintiff seeks—at the outset of these cases—simultaneous pre-approval of a discovery plan, and predetermination of the admissibility of expert evidence at trial without regard to what the facts ultimately may show or expert discovery reveals.

Thus, the Proposal invites evidentiary error and prejudice from the start. It threatens to multiply, rather than contain, the costs of this litigation. It calls for expert opinions before a fully-developed record has been created, which would necessitate serial updates as the cases progress. It calls for the parties to simultaneously exchange sampling protocols, improperly putting the burden on Defendants to opine on how Plaintiff might present evidence to support claims on which Plaintiff alone bears the burden of proof. The Proposal should be rejected in favor of the orderly fact and expert discovery contemplated by the Federal Rules of Civil Procedure and Evidence, including as reflected in the parties' Joint Report Regarding Certain Case Management Issues dated January 10, 2012 ("Joint Rep.").

## DISCUSSION

### Rulings on Motions to Dismiss May Profoundly Affect the Costs, Benefits and Methodology Associated with Sampling

Plaintiff's submission never mentions—let alone addresses—the pending and anticipated motions to dismiss. It therefore says nothing about how this Court's rulings on those motions may impact any document production or the scope of any remaining claims and, ultimately, any sampling performed in these cases.

For example, the Proposal calls for the immediate production of "loan tapes," the assembly of lists "identifying the originators of the loans," and "specific proposed sampling protocols" for all of the 449 Securitizations on which Plaintiff has sued. (Proposal 2.) However,

3

if the Court holds that either the applicable repose or limitations period has expired, few of the 449 Securitizations on which Plaintiff has sued will remain at issue.  (*See* UBS Mot. to Dismiss 12-36.)  The burden Plaintiff envisions in prosecuting claims on 449 Securitizations in 16 different cases may be radically different once the dismissal motions are decided.  (*See* Proposal 9-10.)  The cost-benefit analysis associated with sampling, "clustering," and "extrapolation" (*id.*), as opposed to analysis of the loans Plaintiff has placed at issue, would change dramatically.

The Court's rulings on whether certain statements are actionable may also have consequences for any sampling proposal Plaintiff might ultimately offer.  Plaintiff, for example, has stated that it may stratify its proposed loan samples using loan-to-value ("LTV") ratios and occupancy status, among other factors.  (Proposal 8-9.)  This Court may agree, however, with other courts in this District that have held that LTV ratios—and the appraisals underlying them— are non-actionable opinions.  *See, e.g.*, *In re IndyMac Mortg.-Backed Sec. Litig.*, 718 F. Supp. 2d 495, 510-11 (S.D.N.Y. 2010) (Kaplan, J.); *N.J. Carpenters Health Fund* v. *DLJ Mortg. Capital, Inc.*, No. 08 Civ. 5653 (PAC), 2010 WL 1473288, at *7-8 (S.D.N.Y. Mar. 29, 2010) (Crotty, J.); *Tsereteli* v. *Residential Asset Securitization Trust 2006-A8*, 692 F. Supp. 2d 387, 393-95 (S.D.N.Y. 2010) (Kaplan, J.).[3]  (*See generally* UBS Mot. To Dismiss 39-42.)  In addition, this Court may agree with the other courts that have held that statements regarding occupancy status are not actionable where, as here, they are accompanied by disclosures that the information was supplied by borrowers.  *See, e.g.*, *Mass. Mut. Life Ins. Co.* v. *Residential Funding Co.*, Nos. 11-30035, 11-30039, 11-30044, 11-30047, 11-30048, 11-30094, 11-30126, 11-30127, 11-30141,

---

[3]  As Judge Kaplan determined in *Tsereteli,* "neither an appraisal nor a judgment that a property's value supports a particular loan amount is a statement of fact" because "[e]ach is instead a subjective opinion based on the particular methods and assumptions the appraiser uses."  692 F. Supp. 2d at 393.

2012 U.S. Dist. LEXIS 17864, at *31-33 (D. Mass. Feb. 14, 2012) (Ponsor, J.); *Footbridge Ltd. Trust* v. *Countrywide Home Loans, Inc.*, No. 09 Civ. 4050, 2010 U.S. Dist. LEXIS 102134, at *23-26 (S.D.N.Y. Sept. 28, 2010) (Castel, J.). (*See generally* UBS Mot. to Dismiss 42-43.) Depending on this Court's rulings, a sampling protocol that stratifies loans based on these factors may not be appropriate.

### Plaintiff's Proposal Violates the Federal Rules and the Parties' Agreements on the Orderly Conduct of Discovery

This Court already has declined to lift the discovery stay in these actions, despite Plaintiff's several prior requests. (*See*, *e.g.*, Dec. 2, 2011 Tr. 21-24; Order 5-6, Feb. 6, 2012.) The Proposal attempts yet again to circumvent this Court's rulings by seeking burdensome document productions, as well as compilations of additional information, in three weeks, followed by an expedited, informal period for simultaneous exchanges of expert-driven proposals one month later. (*See* Proposal 2, 12.) Plaintiff's submission cites no precedent for upending the Federal Rules of Civil Procedure and typical expert discovery and no reason for the Court to reconsider its rulings. To the contrary, the discovery stay is consistent with Federal Rule of Civil Procedure 26(d), which holds discovery in abeyance until after the parties' conference under Rule 26(f). Plaintiff has agreed that the Rule 26(f) conference should occur after a decision on the first motion to dismiss. (*See* Joint Rep. 7.) After service of a proper document demand, Defendants are entitled to a reasonable period of time (set at 30 days in the typical case) to object on various grounds. Fed. R. Civ. P. 34(b), 26(b).

Plaintiff's request that it be exempted from these rules and procedures raises multiple concerns. First, before assessing any sampling proposal from Plaintiff, Defendants should be permitted to take discovery concerning the GSEs' own use of sampling, including in reviewing mortgage pools for compliance with underwriting standards, in the ordinary course of

5

their extensive business as issuers of RMBS and whole loan purchasers.[4]  The Proposal affords no opportunity for such discovery.[5]  Second, the complaints expressly allege that Plaintiff conducted a "review of loan-level data for a sample of mortgage loans in each Securitization." (*See*, *e.g.*, UBS Second Am. Compl. ¶ 282.)  In other words, Plaintiff has alleged that it *already* has sampled in most instances at least *1000* loans per securitization, allegedly deriving results "on a statistically-significant basis." (*Id.*)[6]  Defendants are entitled to take discovery concerning these allegations and to use that discovery in connection with any sampling evidence Plaintiff seeks to adduce.  Again, the Proposal provides no opportunity for this discovery.  Third, much of the requested information already is in the possession of the GSEs or readily available from

---

[4] *See* Ex. A, Letter from Jordan D. Hershman on behalf of Freddie Mac to Gary J. Cohen, General Counsel, Financial Crisis Inquiry Commission, Sept. 21, 2010 (without attachments), available at http://fcic-static.law.stanford.edu/cdn_media/fcic-docs/2010-09-21%20Freddie%20Mac%20Counsel%20letter%20to%20the%20FCIC.pdf.

[5] Presumably in an effort to shrink sample sizes as much as possible, Plaintiff proposes a 5% margin of error.  Freddie Mac's own published guidelines on post-closing control allow sampling, but require that a random sample consist of either at least 10% of the population or, in cases with populations of at least 5,000 home mortgages, a 2% or lower margin of error.  *See* Ex. B, Freddie Mac Single-Family Seller/Servicer Guide, Volume 1 Chapter 48.4(a).

[6] If it seriously wanted to engage in discussions about sampling, rather than using sampling as a means to seek expedited discovery and obtain premature judicial imprimatur of its experts' methodologies and manner of trial proof, Plaintiff would have provided its alleged sampling methodology and results to Defendants as a starting point for discussion.  As Plaintiff has admitted, "obviously it will be our burden to demonstrate to the Court why sampling is appropriate.  We are totally prepared to do that." (Dec. 2, 2011 Tr. 37-38.)  Defendants have conveyed to Plaintiff their willingness at the appropriate time to provide reasonable discovery to permit all parties to sample, or not, as they see fit, subject to the applicable rules of civil procedure and evidence. (*See*, *e.g.*, Def. Am. Rep. 14.)

third-party vendors.  Plaintiff already subscribes to one or more third-party services that provide loan and originator information that Plaintiff now demands from Defendants.[7]

## Sampling Protocol Exchanges and Assessments Are<br>Premature and Cannot Properly Precede Fact Discovery

The ruling Plaintiff seeks from this Court sanctioning a particular plan for statistical sampling at the outset of these cases and without an opportunity for discovery will have unforeseen repercussions months or years from now at summary judgment and trial. (Proposal 6, 11.)  The requested ruling, however, is not possible at this stage of the litigation because a mere plan for sampling is not itself evidence that could be deemed admissible under Federal Rule of Evidence 702.  Before ruling that statistical evidence offered by Plaintiff is admissible, this Court will need to determine that the expert put forward by Plaintiff "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(d).  Evaluating any sampling plan in isolation, before development of the factual record in each case and before the application of the sampling plan to that record, would not provide a basis for making the determination required by Rule 702(d).

Indeed, expert reports and expert depositions follow fact discovery precisely because one cannot assess the reliability, relevance and admissibility of expert testimony in light of the facts of a case before fact discovery has occurred.  In these 16 cases, numerous issues of fact to be explored in discovery would bear heavily on whether any "sampling protocol" produced statistically reliable results.  Notably, Plaintiff provides no expert support or any other reasonable basis for its claim that it will be able to develop a "specific proposed sampling

---

[7] *See* Ex. C, Federal Business Opportunities, Solicitation No. FHF-12-ABS, available at https://www.fbo.gov/index?s=opportunity&mode=form&id=ae3e2077aa23817656ce670cb2868c84&tab=core&_cview=0 (contract awarded Sept. 29, 2011 by FHFA to Lewtan Technologies Inc. for ABSNet Services).

protocol[]" immediately upon receipt of "loan tapes" and "information … identifying the originators of the loans." (Proposal 2.)  In fact, the Proposal dramatically understates the amount of discovery and depth of investigation necessary to develop a sound sampling methodology.

Below are just two examples of issues to be explored in discovery that an expert may consider, although the Proposal ignores them:

- Before discovery, it is not known what characteristics of the loans may correlate with alleged material departures from the relevant underwriting guidelines.  For example, it may be that the rate of alleged material departures varies substantially depending on originator, or by geographical location of the underlying collateral, or by the particular individuals or group reviewing the loans before they were purchased and securitized, or on any number of other factors, not all of which are contained in the loan tapes.  Indeed, one cannot identify all of these factors other than through fact discovery.  One cannot know at the outset whether any sample of loans proportionately represents loans with the characteristics that correlate with alleged material departures from the underwriting guidelines, because it is not known before discovery what those characteristics are or what their relative significance is.

- Before fact discovery, it is also not known how underwriting guidelines or their application may have changed over time.  This problem is particularly acute given that underwriting guidelines are lengthy, complex documents that contemplate multiple exceptions, compensating factors, and the exercise of subjective judgment.  Without accounting for these facts, which will be developed during discovery, one cannot ensure that the size and composition of a sample of loans is appropriately representative of the population.[8]

---

[8]  Plaintiff's proposed resort to "clustering" securitizations with some common features would only compound problems of the type mentioned above.  Moreover, the Proposal appears to assume that, by taking a sample from one securitization or small samples from securitizations that have been grouped together, Plaintiff will be able to extrapolate relevant information about securitizations that have not been sampled at all, or sampled adequately.  These assumptions portend significant error because, as Plaintiff itself has stated, the securitizations were issued "pursuant to different registration statements and prospectus supplements," "contain[] different representations and warranties" and "concern[] mortgage loans that were originated by different entities in different economic circumstances according to different underwriting guidelines." (FHFA's Proposal for the Efficient Administration of the Cases 6, October 19, 2011.)

These problems pervade Plaintiff's proposed approach to accelerate evaluation of sampling procedures. Since the information obtained through discovery will affect any sampling protocol that, under the facts of these cases, could potentially represent a statistically sound approach that is sensitive to the special characteristics of the data, this Court should demand an adequate factual record and appropriate expert testimony before deciding such a significant evidentiary issue.

Plaintiff's only stated justification for deviating from this common-sense approach is that "[t]o defer the [sampling] issue . . . is to predetermine that the parties will be compelled to analyze individual loan files for every disputed securitization, a monumental undertaking given the volume of loans at issue in each Case." (Proposal 11.) Plaintiff overstates the issue. For example, as discussed above, the pending and anticipated motions to dismiss may eliminate or drastically reduce the number and scope of the securitizations at issue. Even if some remain, the proper approach here, as in any civil case, is for each party to present its own evidence in whatever way it chooses, through sampling or otherwise, based upon a developed factual record and subject to adversarial examination and the rules of evidence. It was Plaintiff that decided to bring 16 lawsuits of this size. The burden on Plaintiff to prove its own allegations does not justify its attempt to obtain rulings on the admissibility at trial of expert evidence at the outset of these cases before an adequate record exists to do so.

### There Is No Basis For An Exchange of Sampling Protocols, Because Plaintiff Alone Bears the Burden of Proof

Even if the Court were to decide that a sampling plan could properly be considered now, the Court should reject Plaintiff's request to order the parties to exchange sampling protocols simultaneously. (*See* Proposal 12.) Defendants do not bear the burden of proof on liability or damages, and they should not be required to submit a methodology for

9

proving either. To the contrary, Defendants are entitled to judgment unless Plaintiff develops and presents proof sufficient to meet each of its burdens as a matter of law. *See, e.g.*, *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-323 (1986). If Plaintiff chooses to meet its burdens of proof by relying on statistical sampling, it may submit such expert testimony, subject to challenge by Defendants under the Federal Rules of Evidence and *Daubert* v. *Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

Moreover, even if the Court admits expert testimony offered by Plaintiff at a later stage, it may well be appropriate for the finder of fact to consider more than one methodology, rather than a single methodology as the only valid approach. After the completion of fact discovery, each party is entitled to proffer expert opinions that rely on the record evidence developed during discovery and to offer different analyses of that evidence, all of which could be admissible absent a successful challenge under Federal Rule of Evidence 702, *Daubert*, or other authorities. The Court or other trier of fact then would decide at trial which, if any, competing methodologies or other expert evidence constitute persuasive evidence. Plaintiff's request for simultaneous briefing on the admissibility of expert evidence at the outset of the case ignores Defendants' right to formulate and present their own expert evidence based on a complete factual record.[9]

---

[9] The decisions that Plaintiff cites for the general proposition that evidence based on statistical sampling may, in some circumstances, be admissible do not support the proposition that sampling always is appropriate, that one sampling methodology may be selected to the exclusion of others, or that the parties must agree on a methodology, much less that disputes over these expert issues should be decided at the outset of a case. *See Maran Coal Corp.* v. *Societe Generale de Surveillance S.A.*, No. 92-cv-8728, 1996 U.S. Dist. LEXIS 174, at *6 (S.D.N.Y. Jan. 10, 1996) (defendant is "free to cross-examine the plaintiff's expert about his use of a statistical analysis and to present its own evidence to the jury to prove either that any statistical comparison is invalid or that a different statistical analysis is more appropriate"); *MBIA Ins. Corp.* v. *Countrywide Home Loans, Inc.*, No. 602825/08, 30 Misc. 3d 1201(A), 2010 WL 5186702, at *6 (N.Y. Sup. Ct. Dec.

**CONCLUSION**

Plaintiff's sampling proposal is, in fact, not a proposal at all. It is, instead, a motion to lift the Court's stay of discovery and order expedited briefing on an issue of anticipated expert trial testimony. The Court should reject this request. If dispositive motions are denied, in whole or in part, proceedings should go forward consistent with the Federal Rules.

Defendants will be prepared at any Rule 26(f) conference, or otherwise at the Court's convenience, to discuss further issues raised in the Proposal.

---

22, 2010) (ruling on sampling only after significant discovery of loan files already had occurred and stating "the court makes no finding that Plaintiff's proposed method is the only method by which Plaintiff (or Defendant) may present evidence or that Plaintiff's method is without flaw or unsusceptible to challenge."); *compare Assured Guar.* v. *DB Structured Prods.*, No. 650705/2010 (N.Y. Sup. Ct. Sept. 12, 2011) (ruling that it was "premature," at an early stage of the case, to allow briefing on the admissibility of a potential sampling protocol similar to the outlines of the one proposed by FHFA). (*See* Ex. D.) Other decisions Plaintiff cites are wholly inapposite to the sampling issue raised. *See, e.g., Syncora Guarantee Inc.* v. *EMC Mortg. Corp.*, No. 09 Civ. 3106 (PAC), 2011 WL 1135007, at *7 (S.D.N.Y. Mar. 25, 2011) (addressing plaintiff's rights and remedies under mortgage loan purchase agreement, not statistical sampling methodologies).

Dated: March 14, 2012
       New York, New York

Respectfully submitted,

/s/ Thomas C. Rice
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Alan C. Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017-3954

*Attorneys for Defendants Deutsche Bank AG, Taunus Corporation, Deutsche Bank Securities Inc , DB Structured Products, Inc., Ace Securities Corp., and Mortgage IT Securities Corp.*

/s/ Jay B. Kasner
Jay B. Kasner (jay.kasner@skadden.com)
Scott Musoff (scott.musoff@skadden.com)
Robert A. Fumerton (robert.fumerton@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036

*Attorneys for Defendants UBS Americas Inc., UBS Real Estate Securities Inc., UBS Securities LLC, Mortgage Asset Securitization Transactions, Inc., David Martin, Per Dyrvik, Hugh Corcoran and Peter Slagowitz*

/s/ Richard A. Spehr
Richard A. Spehr (rspehr@mayerbrown.com)
Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY  10019

*Attorneys for Defendants HSBC North America Holdings Inc., HSBC USA Inc., HSBC Markets (USA) Inc., HSBC Bank USA, NA., HSI Asset Securitization Corporation, HSBC Securities (USA) Inc., Neal Leonard, Gerard Mattia, Todd White, Norman Chaleff, and Jon Voigtman*

/s/ Brad S. Karp
Brad S. Karp (bkarp@paulweiss.com)
Susanna M. Buergel (sbuergel@paulweiss.com)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064

*Attorneys for Defendants Citigroup Inc., Citigroup Mortgage Loan Trust Inc., Citigroup Global Markets Realty Corp., Citigroup Global Markets Inc., Susan Mills, Randall Costa, Scott Freidenrich, Richard A. Isenberg, Mark I. Tsesarsky, Peter Patricola, Jeffrey Perlowitz and Evelyn Echevarria*

/s/ James P. Rouhandeh
James P. Rouhandeh
(rouhandeh@davispolk.com)
Brian S. Weinstein
(brian.weinstein@davispolk.com)
Daniel J. Schwartz
(daniel.schwartz@davispolk.com)
Nicholas N. George
(nicholas.george@davispolk.com)
Jane M. Morril
(jane.morril@davispolk.com)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017

*Attorneys for Defendants Morgan Stanley, Morgan Stanley & Co. Incorporated (n/k/a Morgan Stanley & Co. LLC), Morgan Stanley Mortgage Capital Holdings LLC (successor-in-interest to Morgan Stanley Mortgage Capital Inc.), Morgan Stanley ABS Capital I Inc., Morgan Stanley Capital I Inc., Saxon Capital, Inc., Saxon Funding Management LLC, Saxon Asset Securities Company, Gail P. McDonnell, Howard Hubler, Craig S. Phillips, Alexander C. Frank, David R. Warren, John E. Westerfield, and Steven S. Stern*

/s/ Penny Shane
Penny Shane (shanep@sullcrom.com)
Sharon L. Nelles (nelless@sullcrom.com)
Jonathan M. Sedlak (sedlakj@sullcrom.com)
David A. Castleman (castlemand@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

*Attorneys for Defendants JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., J.P. Morgan Mortgage Acquisition Corporation, J.P. Morgan Securities LLC, J.P. Morgan Acceptance Corporation I, Bear Stearns & Co., Inc., EMC Mortgage LLC, Structured Asset Mortgage Investments II Inc., Bear Stearns Asset Backed Securities I LLC, WaMu Asset Acceptance Corporation, WaMu Capital Corporation, Washington Mutual Mortgage Securities Corporation, Long Beach Securities Corporation and certain of the Individual Defendants*

/s/ Bruce Clark
Bruce Clark (clarkb@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

Amanda F. Davidoff (davidoffa@sullcrom.com)
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006

*Attorneys for Defendants First Horizon National Corporation, First Tennessee Bank National Association, FTN Financial Securities Corporation, First Horizon Asset Securities, Inc., Gerald L. Baker, Peter F. Makowiecki, Charles G. Burkett, and Thomas J. Wageman*

/s/ David H. Braff
David H. Braff (braffd@sullcrom.com)
Brian T. Frawley (frawleyb@sullcrom.com)
Jeffrey T. Scott (scottj@sullcrom.com)
Joshua Fritsch (fritschj@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY  10004

*Attorneys for Defendants Barclays Capital Inc., Barclays Bank PLC, Securitized Asset Backed Receivables LLC, Paul Menefee, John Carroll, and Michael Wade*

| | |
|---|---|
| /s/ David Blatt | /s/ Richard W. Clary |
| David Blatt (dblatt@wc.com) | Richard W. Clary (rclary@cravath.com) |
| John McNichols (jmcnichols@wc.com) | Michael Reynolds (mreynolds@cravath.com) |
| WILLIAMS & CONNOLLY LLP | CRAVATH, SWAINE & MOORE LLP |
| 725 Twelfth Street, N.W. | Worldwide Plaza |
| Washington, DC  20005 | 825 Eighth Avenue |
| | New York, NY  10019 |

*Attorneys for Defendants Bank of America Corporation, Bank of America, N.A., Asset Backed Funding Corp., Banc of America Funding Corp., Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Lending, Inc., Merrill Lynch Mortgage Capital Inc., First Franklin Financial Corp., Merrill Lynch Mortgage Investors, Inc., Merrill Lynch Government Securities, Inc., Merrill Lynch, and Pierce, Fenner & Smith Inc.*

*Attorneys for Defendants Credit Suisse Securities (USA) LLC, Credit Suisse Holdings (USA), Inc., Credit Suisse (USA), Inc., DLJ Mortgage Capital, Inc., Credit Suisse First Boston Mortgage Securities Corporation, Asset Backed Securities Corporation, Credit Suisse First Boston Mortgage Acceptance Corporation, Andrew A. Kimura, Jeffrey A. Altabef, Evelyn Echevarria, Michael A. Marriott, Zev Kindler, John P. Graham, Thomas E. Siegler, Thomas Zingalli, Carlos Onis, Steven L. Kantor, Joseph M. Donovan, Juliana Johnson, and Greg Richter*

| | |
|---|---|
| /s/ Richard H. Klapper | /s/ Bruce E. Clark |
| Richard H. Klapper (klapperr@sullcrom.com) | Bruce E. Clark (clarkb@sullcrom.com) |
| Theodore Edelman (edelmant@sullcrom.com) | SULLIVAN & CROMWELL LLP |
| Michael T. Tomaino, Jr. (tomainom@sullcrom.com) | 125 Broad Street |
| Jordan T. Razza (razzaj@sullcrom.com) | New York, NY  10004 |
| SULLIVAN & CROMWELL LLP | |
| 125 Broad Street | Amanda F. Davidoff (davidoffa@sullcrom.com) |
| New York, NY  10004 | SULLIVAN & CROMWELL LLP |
| | 1701 Pennsylvania Avenue, N.W. |
| | Washington, DC  20006 |

*Attorneys for Defendants Goldman, Sachs & Co, GS Mortgage Securities Corp., Goldman Sachs Mortgage Company, The Goldman Sachs Group, Inc., Goldman Sachs Real Estate Funding Corp., Peter C. Aberg, Howard S. Altarescu, Robert J. Christie, Kevin Gasvoda, Michelle Gill, David J. Rosenblum, Jonathan S. Sobel, Daniel L. Sparks, and Mark Weiss*

*Attorneys for Defendants Nomura Securities International, Inc., Nomura Holding America Inc., Nomura Asset Acceptance Corporation, Nomura Home Equity Loan, Inc., Nomura Credit & Capital, Inc., David Findlay, John McCarthy, John P. Graham, Nathan Gorin, and N. Dante Larocca*

/s/ Jay B. Kasner
Jay B. Kasner (jay.kasner@skadden.com)
Scott Musoff (scott.musoff@skadden.com)
George Zimmerman (george.zimmerman@skadden.com)
Robert A. Fumerton (robert.fumerton@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY  10036

*Attorneys for Defendants SG Americas, Inc., SG Americas Securities Holdings, LLC, SG Americas Securities, LLC, SG Mortgage Finance Corp., and SG Mortgage Securities, LLC, Arnaud Denis, Abner Figueroa, Tony Tusi, and Orlando Figueroa*

/s/ Greg A. Danilow
Greg A. Danilow (greg.danilow@weil.com)
Vernon Broderick (vernon.broderick@weil.com)
WEIL, GOTSHAL, & MANGES LLP
767 Fifth Avenue, 25th Fl.
New York, NY  10153

*Attorneys for Defendants General Electric Company, General Electric Capital Services, Inc., GE Mortgage Holding, LLC, and GE-WMC Securities, LLC*

/s/ David Potter
David Potter (dpotter@lpgllp.com)
LAZARE, POTTER & GIACOVAS LLP
950 Third Avenue
New York, New York  10022

Jeffrey A. Lipps (lipps@carpenterlipps.com)(pro hac pending)
Jennifer A.L. Battle (battle@carpenterlipps.com)
CARPENTER LIPPS & LELAND LLP
280 Plaza, Suite 1300
280 N. High Street
Columbus, Ohio  43215

*Attorneys for Defendants Residential Capital LLC, GMAC-RFC Holding Company, LLC, Residential Funding Company, LLC, Ally Securities, LLC, Residential Asset Mortgage Products, Inc., Residential Asset Securities Corporation, and Residential Accredit Loans, Inc.*

/s/ Sandra D. Hauser
Sandra D. Hauser (sandra.hauser@ snrdenton.com)
SNR DENTON US LLP
1221 Avenue of the Americas
New York, New York 10020

*Attorneys for Defendants Matthew Perkins, Craig Davis, Megan Davidson and Marangal Domingo*

/s/ Richard A. Spehr
Richard A. Spehr (rspehr@mayerbrown.com)
Michael O. Ware (mware@mayerbrown.com)
MAYER BROWN LLP
1675 Broadway
New York, NY  10019

*Attorneys for Defendants Ally Financial Inc. and GMAC Mortgage Group, Inc.*

/s/ Thomas C. Rice
Thomas C. Rice (trice@stblaw.com)
David J. Woll (dwoll@stblaw.com)
Alan Turner (aturner@stblaw.com)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017

*Attorneys for Defendant RBS Securities Inc.*

/s/ Daniel C. Zinman
Daniel C. Zinman (dzinman@rkollp.com)
Neil S. Binder (nbinder@rkollp.com)
RICHARDS KIBBE & ORBE LLP
One World Financial Center
New York, NY  10281

*Attorneys for Defendants George C. Carp, Robert Caruso, George E. Ellison, Adam D. Glassner, Daniel B. Goodwin, Juliana Johnson, Michael J. Kula, William L. Maxwell, Mark I. Ryan, and Antoine Schetritt, Matthew Whalen, Brian Sullivan, Michael McGovern, Donald Puglisi, Paul Park, and Donald Han*

/s/ Pamela Rogers Chepiga
Pamela Rogers Chepiga
Josephine A. Cheatham
ALLEN & OVERY LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
pamela.chepiga@allenovery.com
allie.cheatham@allenovery.com

*Attorneys for Defendant Samuel L. Molinaro, Jr*

/s/ Dani R. James
Dani R. James (djames@kramerlevin.com)
Jade A. Burns (jburns@kramerlevin.com)
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036

*Attorneys for Defendant Jeffrey L. Verschleiser*